CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
3/2/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

ALFRED L. SNAPP, JR., )
BETTY V. SNAPP, and )
SHARON K. SNAPP, )
                                                             )
     Plaintiffs, )
                                                             )
v. ) Civil Action No.: 5:17-cv-00059
                                                            )
LINCOLN FINANCIAL SECURITIES ) By: Elizabeth K. Dillon
CORPORATION, )      United States District Judge
RIVERSOURCE DISTRIBUTORS, INC., )
and )
RIVERSOURCE LIFE INSURANCE )
COMPANY, )
                                             )
     Defendants. )

**MEMORANDUM OPINION**

Plaintiffs Alfred and Betty Snapp, together with their daughter-in-law, Sharon Snapp, bring this action against Lincoln Financial Securities Corporation (Lincoln), RiverSource Distributors, Inc., and RiverSource Life Insurance Company (together, RiverSource). Plaintiffs assert various claims arising from defendants' alleged securities fraud.

Before the court is defendants' motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In it, defendants argue that many of plaintiffs' claims are barred by the applicable statute of limitations, and that others fail to state a claim. The matter has been fully briefed and argued. For the reasons set forth below, the court will grant defendants' motion to dismiss.

I. BACKGROUND

In late 2007, Alfred and Betty Snapp met with Randy Watts, who was both a Financial Industry Regulatory Authority (FINRA) registered representative of Lincoln Financial and a professional authorized to sell RiverSource variable annuities. The Snapps told Watts that they wanted out of their prior investments that fluctuated with the market, and they wanted to put their life savings in an investment which was safe, like an annuity. Watts recommended that the Snapps invest their life savings in a RiverSource variable annuity. He told them that the investment "would never go below the initial amount they would be investing" and that "it would be paid out in full as a death benefit." (Compl. ¶¶ 11, 14.) Before agreeing, the Snapps "read the paperwork and asked a lot of questions about the alleged guarantee." (*Id.*)

In 2008, Sharon Snapp met with Watts, who had previously recommended that she invest her late husband's life insurance proceeds in a Hartford variable annuity. Watts recommended to Ms. Snapp that she move her investment into a RiverSource variable annuity, and similarly assured her that "the original amount invested would never decline in value." (*Id.* ¶ 18.)

By November 2009, every quarterly and annual statement that the Snapps received from RiverSource contradicted Watts's representations that the value would never decline below the initial investment and that the death benefit would equal the initial investment. Mr. and Mrs. Snapp "would often question Mr. Watts about statements received showing a reduction in the annuity's value." (*Id.* ¶ 13.) Likewise, Ms. Snapp "would receive statements indicating a decline in value, [and] she would ask Mr. Watts about them." (*Id.* ¶ 19.) Watts repeatedly assured them that their investment would not decline. (*Id.*)

In 2015, Watts purportedly committed suicide after he was contacted by an investigator regarding thefts from customers. (*Id.* ¶ 7.) After Watts's death, Mr. and Mrs. Snapp called his office "and found out for the first time" that their death benefit had declined by approximately $197,000.

(*Id.* ¶ 15.) Similarly, Ms. Snapp "learned that her account value" had declined by approximately $80,000. (*Id.* ¶ 21.)

The Snapps filed a FINRA arbitration claim against Lincoln and RiverSource on April 18, 2016. The arbitration panel granted Lincoln's and RiverSource's motion to dismiss based on FINRA's six-year "eligibility" rule for the submission of claims.

## II. DISCUSSION

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

As already noted, defendants argue that many of plaintiffs' claims are time-barred. Statutes of limitation and statutes of repose are affirmative defenses that may be raised in a

3

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (citing *Dean v. Pilgrim's Pride Corp*, 395 F.3d 471, 474 (4th Cir. 2005)). While a Rule 12(b)(6) motion "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations and quotations omitted).

**B. Consideration of Extrinsic Documents**

To their motion to dismiss, Lincoln and RiverSource attach 14 exhibits. Exhibit A, the only exhibit to which the Snapps object, is the FINRA dispute resolution order. Exhibits B through N are the Snapps' RiverSource annuity statements. To their memorandum in opposition to defendants' motion to dismiss, the Snapps attach one exhibit, to which defendants do not object, which includes a 2007 RiverSource welcome letter, RiverSource's "how to contact us" page, and the Snapps' 2007 contract verification record.

Typically, when a defendant moves to dismiss under Rule 12(b)(6), a court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). If a court goes beyond these documents during the pleading stage of litigation, then it "improperly converts the motion to dismiss into a motion for summary judgment." *Id.* "Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.

Accordingly, a court should generally focus its "inquiry on the sufficiency of the facts relied upon by the plaintiff[] in the complaint." *Zak*, 780 F.3d at 606. It may, however, consider extrinsic documents attached to the pleadings that are "'integral to and explicitly relied on in the complaint,'" when the documents' authenticity is unchallenged. *Id.* (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Here, the only document attached to the pleadings that falls outside these parameters is defendants' Exhibit A, the FINRA dispute resolution order. All of the other documents meet the requirements for consideration at the motion-to-dismiss stage. The court thus considers the annuity statements and the Snapps' exhibit in deciding Lincoln's and RiverSource's Rule 12(b)(6) motion, and excludes Exhibit A.

## C. The Snapps' Virginia Securities Act Claims Are Time-Barred.

Lincoln and RiverSource argue that the Snapps' Virginia Securities Act claims in Count I are time-barred under the two-year limitations period. The court agrees.

The Virginia Securities Act imposes liability in connection with the purchase or sale of a security.[1] The Act provides: "No suit shall be maintained to enforce any liability under this section unless brought within two years after the transaction upon which it is based . . . ." Va. Code § 13.1-522. The Fourth Circuit has emphasized that this two-year limitation is "an absolute cutoff." *Caviness v. Derand Res. Corp.,* 983 F.2d 1295, 1305–06 (4th Cir. 1993) (holding that the limitations period is not subject to equitable tolling because "we conclude from the plain meaning of the statute that the Virginia legislature intended to provide unqualifiedly that a claim must be brought within two years").

---

[1] As relevant here, the Virginia Securities Act makes it unlawful, in the offer or sale of any securities, "(1) To employ any device, scheme or artifice to defraud, or (2) To obtain money or property by means of any untrue statement of material fact or [o]mission[, or] (3) To engage in any transaction . . . which operates . . . as a fraud or deceit upon the purchaser." Va. Code § 13.1-502.

5

The Snapps allege that Lincoln and RiverSource violated the Virginia Securities Act "by engaging in a course of deceptive schemes, devices, [and] misrepresentations . . . related to the sale of securities." (Compl. ¶ 37.) But the relevant transactions—the Snapps' purchase of the annuities at issue—occurred in late 2007 and early 2008. (*Id.* ¶¶ 9, 18.) The parties agree that the operative date of the Snapps' assertion of their claims for statute-of-limitations purposes is April 18, 2016. Because the Snapps failed to assert their claims under the Virginia Securities Act within the "absolute cutoff" of the two-year limitation, *see Caviness*, 983 F.2d at 1305, Count I must fail.

**D. The Snapps' Federal Securities Fraud Claims Are Time-Barred.**

Count II of the complaint asserts claims against Lincoln and RiverSource under section 10(b) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78j(b). Like the Virginia Securities Act, the Exchange Act imposes liability for material misrepresentations with respect to the "purchase or sale" of a security. 15 U.S.C. § 78j(b). Section 10(b) claims are subject to a five-year statute of repose and a two-year statute of limitations.[2] 28 U.S.C. § 1658(b). The statute of repose, which is "unqualified," *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010), "starts to run on the date the parties have committed themselves to complete the purchase or sale transaction," *Carlucci v. Han*, 886 F. Supp. 2d 497, 514 (E.D. Va. 2012). The statute of limitations begins to run "once the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Reynolds*, 559 U.S. at 652.

In this case, the Snapps committed themselves to complete the purchase of the annuities in late 2007 and early 2008. (*Id.* ¶¶ 9, 18.) Because the Snapps did not assert their securities fraud

---

[2] A statute of limitations is "[a] law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued." *Carlucci*, 886 F. Supp. 2d at 514 (citing Black's Law Dictionary 1450–51 (8th ed. 2004)). It is often subject to a "discovery rule," meaning that it does not begin to run until the plaintiff is aware (or should be aware) of his claim. By contrast, a statute of repose is "[a] statute barring any suit that is brought after a specified time since the defendant acted." *Id*. at 1451. The statute of repose serves as a fixed "cutoff," and is not subject to equitable tolling. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

6

claims until 2016, the Snapps' claims in Count II are barred by the statute of repose.[3]

E. **The Snapps' Fraud and Constructive Fraud Claims Are Time-Barred.**

Counts III and IV of the complaint assert common law fraud and constructive fraud claims under Virginia law. Lincoln and RiverSource argue that Counts III and IV must be dismissed as time-barred under the statute of limitations. Again, the court agrees.

1. **Plaintiffs' fraud claims accrued well before April 2014.**

Section 8.01–243(A) of the Virginia Code provides that "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code § 8.01–243(A). A cause of action for fraud accrues "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01–249(1). The Supreme Court of Virginia has interpreted the due diligence requirement in § 8.01–249 as "such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *STB Marketing Corp. v. Zolfaghari*, 393 S.E.2d 394, 397 (Va. 1990) (citations and internal quotation marks omitted). In order to successfully maintain a claim for fraud, plaintiffs "bear the burden 'to prove that [they] acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action.'" *Terry Phillips Sales, Inc. v. SunTrust Bank*, No. 3:13-cv-468, 2014 WL 670838, at *5 (E.D. Va. Feb. 20, 2014) (quoting *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962)). In other words, the Snapps must allege that, even through the exercise of due diligence, they would not have

---

[3] Because the court concludes that the statute of repose bars the claims, it does not reach the statute of limitations analysis as to Count II.

7

discovered Watts's fraudulent conduct until during, or more recently than, April 2014.

The Snapps' common law fraud and constructive fraud claims are based on Watts's alleged point-of-sale misrepresentations in 2007 and 2008. (Compl. ¶¶ 45, 49.) In particular, the Snapps allege that Watts misrepresented to them that 1) the value of their annuities would never decline below the initial investment, and 2) the annuities would pay out as a death benefit equal to their initial investment. (*Id.* ¶¶ 11–12, 18.) The Snapps assert that they did not discover these misrepresentations until Watts's suicide in November 2015, when "the Snapps spoke to Gina at his office, and found out for the first time that Mr. Watts's statements" were not true. (*Id.* ¶ 15.)

Even drawing all reasonable inferences in the Snapps' favor, the court concludes that Watts's misrepresentations reasonably should have been discovered, and the cause of action for fraud thus accrued, well before April 2014. *See Cozart*, 680 F.3d at 365 ("[The court] need not accept . . . unwarranted inferences, unreasonable conclusions, or arguments.") (internal citations omitted). On the one hand, the court rejects Lincoln's and RiverSource's argument that the fraud claims accrued when the Snapps first received annuity statements in late 2008 that contradicted Watts's representations. Lincoln and RiverSource rely on *Mountcastle v. Caliber Home Loans & Flagstar Bank*, No. 2:15-cv-169, 2015 WL 13035371, at *1 (E. D. Va. Oct. 30, 2015), a fraud case in which the plaintiff claimed that bank representatives told her that they could lower her interest rate to 2%, but in fact applied a 7% interest rate to her mortgage loan. The *Mountcastle* court granted the defendants' motion to dismiss, reasoning that the cause of action accrued "the day Plaintiff saw the alleged interest rate error" in her loan documents. 2015 WL 13035371, at *2. This case is less clear cut. Although the late 2008 annuity statements began to contradict Watts's assertion that the value would never decline below the initial investment, the court does not conclude that his misrepresentations should have been discovered upon the very first contradictory annuity statement because, alone, it could have represented a mere aberration.

8

On the other hand, by November 2009, every quarterly and annual statement that the Snapps received from RiverSource directly contradicted Watts's representations that the value would never decline below the initial investment and that the annuities would pay out as a death benefit an amount equal to their initial investment. The complaint demonstrates the Snapps' actual notice of this contradiction. *See, e.g.*, Compl. ¶ 13 ("The Snapps . . . would often question Mr. Watts about statements received showing a reduction in the annuity's value."); *id.* ¶ 19 ("When [Ms. Snapp] would receive statements indicating a decline in value, she would ask Mr. Watts about them.") To conclude instead, that a reasonable person would not have discovered that Watts's statements were misrepresentations before April 2014—despite a uniform barrage of annuity statements to the contrary from November 2009 to April 2014—would stretch reason to its breaking point. The Snapps' common law fraud claims are thus time-barred.[4]

**2. Equitable estoppel does not apply to toll the statute of limitations.**

The Snapps contend that Lincoln and RiverSource should be prevented from asserting statute of limitations defenses under a theory of equitable estoppel. The doctrine of equitable estoppel "bars a statute of limitations defense by a defendant who, by his own conduct, lulls another into a false sense of security." *Neal v. Stryker Corp.*, No. 1:11-cv-62, 2011 WL 841509, at *3 (E.D. Va. Mar. 8, 2011) (internal citations omitted). In order for the doctrine to apply, a

---

[4] Citing *STB Marketing Corp. v. Zolfaghari*, 393 S.E.2d 394 (Va. 1990), the Snapps argue that their fraud claims should survive the motion to dismiss because the issue of whether they exercised reasonable due diligence is a fact question reserved for the jury. But *Zolfaghari* does not stand for this proposition. The court in *Zolfaghari* held, without remanding the matter for a jury to determine, that "[plaintiff] exercised due diligence and that its cause of action for fraud did not accrue until" a later date than that determined by the trial court. 393 S.E.2d at 397. Indeed, federal district courts in Virginia generally grant motions to dismiss common law fraud claims as time-barred when they conclude that the fraud reasonably should have been discovered outside the statute of limitations window. *See, e.g., Mountcastle*, 2015 WL 13035371, at *2 (granting motion to dismiss fraud claim as barred by statute of limitations because the cause of action accrued the day plaintiff observed interest rate in loan documentation that directly contradicted the defendant's oral representation); *Craddock v. Beneficial Financial I, Inc.*, No. 7:14-cv-93, 2014 WL 4385836, at *3 (W.D. Va. Sept. 4, 2014) (granting motion to dismiss fraud claim as barred by statute of limitations because the cause of action accrued when plaintiff signed loan documentation that included interest rates that contradicted the defendant's oral representation). *See also Brockington*, 637 F.3d at 506 ("[D]ismissal [pursuant to Rule 12(b)(6)] is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").

plaintiff must show that the defendant took "actions it should unmistakably have understood would cause the [plaintiff] to delay filing his charge." *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965–66 (4th Cir. 1982). The doctrine typically applies "where a defendant has misrepresented to a plaintiff his legal rights . . . or has used settlement negotiations to induce delay." *Caviness*, 983 F.2d at 1302 (citations omitted). A plaintiff seeking to invoke equitable estoppel must demonstrate that he or she "reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire." *Barry v. Donnelly*, 781 F.2d 1040, 1042 (4th Cir. 1986).

When faced with a Rule 12(b)(6) motion to dismiss "where it is apparent that the statute of limitations expired before the filing of the plaintiff's complaint, the plaintiff has the burden of pleading facts that would support a finding that equitable estoppel applies." *Neal*, 2011 WL 841509, at *3. If the plaintiff fails to do so, dismissal is appropriate. *See, e.g.*, *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 665 (M.D.N.C. 2013) (dismissing claim as time-barred and rejecting equitable estoppel argument because "the complaint fails to plead facts to make an equitable estoppel claim plausible"); *Neal*, 2011 WL 841509, at *3 (dismissing claim as time-barred and rejecting equitable estoppel argument because plaintiff's "extended delay" before filing suit "eliminates as a matter of law the possibility that he had timely filed this action based on . . . equitable estoppel"); *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 718 (W.D. Va. 2008) (dismissing claim as time-barred and rejecting equitable estoppel argument because plaintiff failed "to allege any facts in his Complaint that would support a conclusion that Defendants [acted] with the aim of lulling him into a false sense of security concerning the statute of limitations"), *aff'd* 362 F. App'x 359 (4th Cir. 2010).

Here, the complaint fails to plead facts to make an equitable estoppel claim plausible. While the court obviously does not condone Watts's misrepresentations, nothing in the complaint bears the conclusion that Watts acted "with the aim of lulling [the Snapps] into a false sense of security concerning the statute of limitations." 589 F. Supp. 2d at 718. Furthermore, the complaint describes the consistent decline in value recorded in the annuity statements (Compl. ¶¶ 13, 19), illustrating that the Snapps were "confronted with evidence that clearly and overwhelmingly indicate[d] [Watts's] assurances . . . would not be upheld," *Gitter v. Cardiac & Thoracic Surgical Assoc., Ltd.*, 419 F. App'x. 365, 370 (4th Cir. 2011). Thus, the principles of equitable estoppel do not apply to prevent the application of the statute of limitations in this case.

### 3. Virginia Code § 8.01-229(D) does not apply to toll the statute of limitations.

The Snapps also contend that Lincoln and RiverSource should be prevented from asserting statute of limitations defenses under a theory of obstruction. Under Virginia Code § 8.01-229(D), a statute of limitations is tolled when a defendant uses any direct or indirect means to obstruct the filing of an action.

In order to rely on this tolling provision, a plaintiff "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action." *Newman v. Walker*, 618 S.E.2d 336, 337 (Va. 2005) (internal citations and quotations omitted). For the statute of limitations to be tolled, "[c]oncealment of a cause of action . . . must consist of some trick or artifice *preventing inquiry*, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence." 618 S.E.2d at 338 (internal citations and quotations omitted) (emphasis added). Furthermore, the fraudulent concealment of the cause of action "must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action." *Id.* (internal

11

citations and quotations omitted).[5]

The Snapps argue that Watts's false statements about the value of their investments constituted "affirmative acts to conceal his previous fraud." (Pl.'s Opp'n 10, Dkt. No. 10.) But the Snapps have conceded that they regularly received annuity statements that contradicted Watts's representations, and the statements caused them to "often question" and "ask" about the reduction in value. (Compl. ¶¶ 13, 19). The Snapps do not allege that Watts directly or indirectly prevented them from receiving their annuity statements, from reviewing their annuity statements, or from discussing the contradictions with anyone else in order to reconcile the annuity statements with his representations. This case is not at all like *Evans v. Trinity Industries, Inc.*, 137 F. Supp. 3d 877, 880–82 (E.D. Va. 2015). In *Evans*, a products liability action, the court denied the defendant-manufacturer's motion for judgment on the pleadings because it held that the plaintiff-motorists sufficiently alleged fraudulent concealment tolled the statute of limitations. 137 F. Supp. 3d at 884. The court reasoned that the plaintiffs' allegations were sufficient because they alleged that a jury in separate *qui tam* suit found that the defendant made unapproved modifications, which it knew created dangerous conditions, but represented to Federal Highway Administration that the product was not modified. *Id.* at 880, 884. In contrast, the Snapps have failed to allege any facts that would support the conclusion that Watts's statements constituted affirmative acts to obstruct the filing of their action within the meaning of Virginia Code § 8.01-229(D). The obstruction tolling provision does not save their claims.

---

[5] In *Newman*, the Supreme Court of Virginia reversed the circuit court's dismissal of a case as time-barred where the defendant used stolen identification to falsely identify himself at the scene of an automobile accident. 618 S.E.2d at 340. The court took no issue with the circuit court's denying the plaintiff's obstruction argument at the motion-to-dismiss stage; rather, the court "conclude[d] that the circuit court erred in holding that [defendant's] conduct did not constitute a direct or indirect means to obstruct [plaintiff's] filing of this action." *Id.* The court remanded the case for "the circuit court [to] make two factual determinations that were not previously necessary to its judgment sustaining the plea of the statute of limitations: (1) whether [defendant's] use of stolen identification was "designed or intended, directly or indirectly, to obstruct" [plaintiff's] filing of this action[,] and (2) if so, the period of time such obstruction continued." *Id.* (citations omitted).

### 4. The "continuing representation" exception does not apply to toll the statute of limitations.

The Snapps' final argument as to why the statute of limitations should not apply centers on the "continuing representation" exception. This exception applies "where there is an undertaking or agency which requires a continuation of services," such as the services of a doctor or attorney, and mandates that "the statute of limitations does not begin to run . . . until the termination of the undertaking or agency." *Keller v. Denny*, 352 S.E.2d 327, 329 (Va. 1987) (citations omitted). In particular, the continuing representation exception "pertains to claims for breach of fiduciary duty" but "does not apply to fraud actions." *Terry Phillips Sales, Inc. v. SunTrust Bank*, No. 3:13-cv-468, 2014 WL 670838, at *5 n.4 (E.D. Va. Feb. 20, 2014) (citations omitted).

The continuing representation exception does not apply to the Snapps' common law fraud claims. *See id.* Even if it did, the Snapps do not allege that Watts's sale of the annuity "require[d] a continuation of [his] services" as a financial advisor. *Keller*, 352 S.E.2d at 329. Rather, their "purchase of the [annuities] was a particular and severable undertaking . . . that did not require the continuing services of Defendants." *Smith ex rel. Clearview Baptist Church v. CNA Fin. Corp.*, No. 7:01-cv-653, 2003 WL 24253672, at *9 (W.D. Va. Nov. 28, 2003) (citations omitted) (holding that the continuing representation doctrine did not apply to save breach of fiduciary claim as to purchase of promissory notes). The Snapps' common law fraud claims are time-barred.[6]

---

[6] After oral argument, the Snapps submitted a supplement to their response to Lincoln and RiverSource's motion to dismiss and to the Snapps' associated motion to amend. The supplement states that in 2009, Betty Snapp tried to call Watts to discuss apparent declines in values on RiverSource statements. (Pls.' Supp. 2, Dkt. No. 20.) Snapp called the "800 number" for RiverSource after she could not reach Watts, and the customer service representative told her to call her investment professional (Watts) "to explain it to her." (*Id.*) The court has carefully considered the supplement and concludes that it does not alter the above analysis.

**F. The Snapps' Unsuitability Claims Are Not Independent Causes of Action.**

Lincoln and RiverSource argue that the Snapps' "unsuitability" claims in Count V—regarding defendants' "unsuitable recommendations" as to securities and investments—do not constitute an independent cause of action. *See* § 10(b); Va. Code §§ 13.1-502; 14 VAC 5-45-40. The Snapps concede this point. The court will dismiss Count V.

**G. The Snapps Fail to State a Claim for Negligence and Negligent Supervision.**

Lincoln and RiverSource argue that the Snapps' claims for negligence and negligent supervision in Count VI are inadequate as a matter of law. The court agrees.

Negligence requires an independent duty, and the duty cannot arise solely by virtue of a contract. *See Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293–94 (Va. 2007). The Snapps fail to establish that Lincoln and RiverSource owed them an independent legal duty of care with respect to the suitability and attendant risks of the annuities.[7] *See Cook v. John Hancock Life Ins. Co.*, No. 7:12-cv-455, 2015 WL 178108, at *22 (W.D. Va. Jan. 14, 2015) (granting motion to dismiss claim against insurance company for negligently allowing investment adviser selling annuity to fraudulently withdraw funds, on grounds that company's duty arose only because of contractual relationship between customer and insurance company).[8] Furthermore, Virginia does not recognize the tort of negligent misrepresentation. *See Hirschler v. GMD Investments*

---

[7] The court is not persuaded by the Snapps' attempt to anchor this duty of care under the Virginia Insurance Code, the FINRA rules, and/or Virginia Code § 8.01-22. The Snapps do not cite any authority, and the court has not found any cases, concluding that the Virginia Insurance Code or the FINRA rules establish duties such that their violation gives rise to a private right of action for negligence. For its part, Section 8.01-22 does not create an independent cause of action. *Vansant & Gusler, Inc. v. Washington*, 429 S.E.2d 31, 33 (Va. 1993).

[8] The court does not, however, accept defendants' argument that *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751 (Va. 1988), made clear that "Virginia does not recognize negligent supervision claims." (Defs.' Reply 15, Dkt. No. 13.) "*Dowdy*'s ruling was . . . limited, and while the Virginia Supreme Court 'has not yet recognized a cause of action for negligent supervision,' it has also not 'completely ruled out such a cause of action under Virginia law.'" *Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 551 (E.D. Va. 2017) (quoting *Hernandez v. Lowe's Home Ctrs., Inc.*, 83 Va. Cir. 210, 2011 WL 8964944, at *5 (Va. Cir. Ct. 2011) (allowing a claim for negligent supervision to survive a demurrer based on facts distinguishable from *Dowdy*)).

*Ltd. P'ship*, No. 90-1289-N, 1991 WL 115773, at *9 (E.D. Va. Mar. 28, 1991), *aff'd*, 972 F.2d 340 (4th Cir. 1992) (granting motion to dismiss claim that defendants "failed to use reasonable care in ascertaining and representing completely and accurately the true facts regarding the investments" because Virginia does not recognize tort of negligent misrepresentation.).

Even if the claims were cognizable, they would be time-barred under the two-year statute of limitations for negligence claims, which is not subject to a discovery rule. Va. Code § 8.01-230. The Snapps argue that the claims are not time-barred because of equitable estoppel, obstruction, and/or the continuing representation rule. These arguments fail for the reasons stated above in sections E.2–4. For these reasons, Count VI will be dismissed.

**H. The Snapps Fail to State a Claim for Negligent Retention.**

Lincoln and RiverSource next argue that the Snapps' negligent retention claim fails because financial damage alone is not sufficient to establish a prima facie claim of negligent retention. The court agrees.

Although the "Virginia Supreme Court has not squarely addressed the question of whether a plaintiff must plead physical harm" to state a negligent retention claim, *Young v. CitiMortgage, Inc.*, No. 5:12-cv-79, 2013 WL 3336750, at *10 n.12 (W.D. Va. July 2, 2013), "based upon the weight of the authority from other courts, and the Virginia Supreme Court's language . . . a plaintiff alleging negligent retention must allege serious and significant physical harm," *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 586 (E.D. Va. 2015). Because the Snapps fail to plead physical harm, their claim for negligent retention in Count VII will be dismissed.

**I. The Snapps' Breach of Fiduciary Claim Is Time-Barred.**

As the Snapps acknowledge, the two-year statute of limitations for breach of fiduciary

15

claims, Va. Code § 8.01-248, runs from the date of the injury, "not the date of discovery." *Smith ex rel. Clearview Baptist Church v. CNA Fin. Corp.*, No. 7:01-cv-653, 2003 WL 24253672, at *8 (W.D. Va. Nov. 28, 2003) (citing *Goldstein v. Malcolm G. Fries & Assoc., Inc.*, 72 F. Supp. 2d 620, 626 (E.D. Va. 1999)). The Snapps argue, though, that their breach-of-fiduciary claims are not time-barred because of equitable estoppel, obstruction, and/or the continuing representation rule. These arguments fail for the reasons stated above in sections E.2–4. Count VIII is thus time barred.

**J. The Snapps Fail to State a Claim for Breach of Contract.**

A breach of contract claim requires: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Cook*, 2015 WL 178108, at *16. Lincoln and RiverSource argue that they were under no legally enforceable obligation. The Snapps assert that the obligation arises under defendants' "contracts" vis-à-vis FINRA's rules and Virginia insurance regulations.

Although there is no case on point in Virginia, courts in other jurisdictions presented with similar facts have reasoned that recognizing such third-party-beneficiary liability in the form of a breach of contract claim would effectively give plaintiffs a private cause of action where they otherwise do not have one.[9] Plaintiffs cite no case law that would support the creation of a breach of contract claim under FINRA rules or Virginia insurance regulations. In the absence of

---

[9] *See, e.g.*, *Gallier v. Woodbury Fin. Servs.*, Inc., No. 14-cv-888, 2015 WL 1296351, at *8 (S.D. Tex. Mar. 23, 2015) (rejecting plaintiffs' argument "that [c]ontracts between FINRA and its members give customers the right as third-party beneficiaries of those contracts to sue the members or a member's manager for violating a FINRA rule"); *Salzmann v. Prudential Sec. Inc.*, No. 91-cv-4253, 1994 WL 191855, at *8 (S.D.N.Y. May 16, 1994) (dismissing breach of contract claim as an "attempt[] to circumvent the decisions that hold that plaintiffs do not have a private right of action under [NASD (the former FINRA)] rules"); *Bloch v. Prudential-Bache Sec.*, 707 F. Supp. 189, 196 (W.D. Pa. 1989) ("[T]hird party beneficiary liability seems incongruous with the large body of case law holding that no private cause of action exists for violation of the rules of self-regulatory organizations.").

authority to the contrary, the court will dismiss Count IX.[10]

**K.  The Snapps' Vicarious Liability Claim Does Not Constitute a Separate Cause of Action.**

Last, Lincoln and RiverSource argue that the Snapps' vicarious liability claim in Count X should be dismissed because vicarious liability is a theory of liability, not a separate cause of action. The court agrees. *See Lim v. Tisack*, No. 7:16-cv-00029, 2017 WL 1194516, at *7 (W.D. Va. Mar. 30, 2017) (quoting *Rohrbaugh v. Kreidler*, 71 Va. Cir. 298, 304 (Va. Cir. 2006)). To the extent it attempts to assert a stand-alone vicarious liability claim, Count X will be dismissed.

**L.  The Snapps' Motion for Leave to Amend the Complaint is Denied Without Prejudice.**

Included within the Snapps' memorandum in opposition to defendants' motion to dismiss is a brief paragraph in which they move for leave to amend the complaint. (Dkt. No. 10, at 20.) The Snapps have not specified how they desire to do so, and it is unclear to the court how an amended complaint would sufficiently state a claim for relief in this case.[11] Because the Snapps have not sufficiently stated how they seek to amend and in order for defendants to have the opportunity to address whether such amendments would be futile, the court will deny the motion without prejudice.

---

[10] Even if the claims were cognizable, they would be time-barred under the five-year statute of limitations for claims based upon written contracts and three-year statute of limitations for unwritten contracts, which are not subject to a discovery rule. Va. Code § 8.01-246(2), (4). The Snapps argue that the claims are not time-barred because of equitable estoppel, obstruction, and/or the continuing representation rule. These arguments fail for the reasons stated above in sections E.2–4.

[11] The Snapps have proffered brief additional facts, which have already been addressed by the court above in section E.4.

III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion to dismiss in its entirety, and deny plaintiffs' motion to amend without prejudice.

An appropriate order will follow.

Entered: March 2, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge